

# In the Court of Criminal Appeals of Texas

No. PD-0408-21

SYED SARTAJ NAWAZ,

*Appellant*,

v.

THE STATE OF TEXAS

On State's Petition for Discretionary Review
From the Fifth Court of Appeals
Collin County

YEARY, J., delivered the opinion of the Court, in which KELLER, P.J., and RICHARDSON, KEEL, SLAUGHTER, and MCCLURE, JJ., joined. HERVEY and NEWELL, JJ., concurred in the result. WALKER, J., dissented.

In a single trial, Appellant was convicted of two instances of

injury to a child. His convictions were for conduct prohibited under two different subsections of Section 22.04(a) of the Texas Penal Code. *See* TEX. PENAL CODE § 22.04(a)(1) & (2) ("(a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence . . . causes a child . . . (1) serious bodily injury; [or] (2) serious mental deficiency, impairment, or injury[.]").[1] Appellant argued on appeal that his two convictions constituted the imposition of multiple punishments for the "same" offense, in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

This Court has previously concluded that, at least for purposes of a defendant's right to a unanimous jury verdict, Sections 22.04(a)(1) and 22.04(a)(2) constitute discrete offenses. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). Nevertheless, the court of appeals in this case determined that convicting Appellant for both offenses constituted multiple punishments for the "same" offense, in violation of federal double-jeopardy protections. *Nawaz v. State*, No. 05-19-00092-CR, 2021

---

[1] In its entirety, Section 22.04(a) reads:

(a)   A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual:

    (1)     serious bodily injury;

    (2)     serious mental deficiency, impairment, or injury; or

    (3)     bodily injury.

TEX. PENAL CODE § 22.04(a).

WL 1884551 at *5 (Tex. App.—Dallas May 11, 2021) (mem. op., not designated for publication). We granted the State's petition for discretionary review to examine the court of appeals' conclusion. And we now reverse its judgment, in part, and remand the cause for further proceedings.

## I. BACKGROUND

In separate counts, the indictment alleged that, on or about the same date, September 19, 2016, Appellant knowingly caused serious bodily injury to a child (Count I), and also knowingly caused the same child to suffer a serious mental deficiency, impairment, or injury (Count II).[2] Evidence at trial showed that, on the date alleged, which was more than two years prior to the trial, while in Appellant's exclusive care and custody, the child suffered abusive head trauma, caused by a "whip-lash type [of] mechanism"—such as violently shaking her or slamming her into a soft surface of some kind. *Id.* at *14. The child suffered no apparent external injury. But she presented with widely diffuse brain bleeding, which caused developmental delays (though it was still too early at the time of trial to ascertain the full extent of the mental

---

[2] Count I of the indictment alleged that on September 19, 2016, Appellant "did . . . knowingly cause serious bodily injury [to the complainant], a child fourteen (14) years of age or younger," in a number of different ways, including by "shaking" her, or causing her to strike a "couch" or "mattress," or by some other manner unknown to the grand jury. Count II alleged that, on that same date, Appellant "did . . . knowingly cause serious mental deficiency, impairment, and injury" to the child-complainant in the same ways he was alleged in Count I to have caused the serious bodily injury.

deficiency).[3] She also suffered retinal bleeding in both eyes that was so extensive as to essentially render her blind.

The State was unable to establish by what specific act (or acts) Appellant caused these "whip-lash"-induced injuries. Nonetheless, the jury convicted Appellant of both counts. It then assessed his punishment at sixteen years' confinement in the penitentiary for each count, which the trial court ruled he should serve consecutively.

On appeal, Appellant contended that convicting him for both counts—causing serious bodily injury and causing serious mental deficiency, etc.—violated the Double Jeopardy Clause. The court of appeals ultimately agreed. It acknowledged our construction of the statutory language of Section 22.04(a), for jury-unanimity purposes, in *Stuhler*. *Id*. at *4. But rather than rely on our construction of the identical injury-to-a-child provisions in *Stuhler*, the court of appeals instead invoked the double-jeopardy analysis this Court conducted in *Villanueva v. State*, 227 S.W.3d 744 (Tex. Crim. App. 2007).

In *Villanueva*, this Court had discussed the potential double-jeopardy implications of a *different* aspect of Section 22.04(a)—causing injury to a child by an *act* versus causing injury to a child by *omission*. *Id*. at 748. Nevertheless, relying on *Villanueva*, the court of appeals in this case concluded that Appellant's double-jeopardy right was violated

---

[3] Appellant argued on appeal that the evidence was legally insufficient to support his conviction under Count II of the indictment, which alleged serious mental deficiency, impairment, or injury. However, concluding that Appellant's conviction under Count II violated the Double Jeopardy Clause, the court of appeals found it unnecessary to resolve this sufficiency ground. *Nawaz*, 2021 WL 1884551, at *5. In light of our disposition of the double-jeopardy issue, we will remand the case to the court of appeals to address the sufficiency issue in the first instance.

because "the State did not prove two separate and distinct incidents of injury." *Nawaz*, 2021 WL 1884551, at *4–5. In its petition for discretionary review, the State now argues that the court of appeals erred to focus on the act or transaction that caused the injuries rather than the injuries themselves as the basis for determining whether Appellant's double-jeopardy right was violated.[4] Appellant, on the other hand, argues that the court of appeals found only a single injury which caused both "the hemorrhage in [the victim's] [r]etina[s] and the holes in [her] brain." Appellant's Brief at 16.

## II. APPLICABLE LAW

We cannot greatly fault the court of appeals for relying on an opinion by this court respecting the issue of double jeopardy over a case about the right to jury unanimity. Nevertheless, we hold that *Stuhler* controls this case. For purposes of explaining why *Stuhler*, not *Villanueva*, is the controlling precedent, it is useful to begin with an examination of the text of the Double Jeopardy Clause itself, and a summary of the relevant opinions addressing the protection that it affords against multiple punishments.

### (A). Double Jeopardy: Multiple Punishments

The Double Jeopardy Clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. CONST amend. V. The guarantee against

---

[4] In its sole ground for review, the State contends: "In concluding that Appellant's convictions for injury to a child causing serious bodily injury and injury to a child causing serious mental deficiency, impairment, or injury violated double jeopardy, did the court of appeals erroneously focus on the transaction rather than the result?"

double jeopardy affords three basic protections: (1) against prosecution a second time for the "same" offense after an acquittal; (2) against prosecution a second time for the "same" offense after a conviction; and (3) against multiple punishments for the "same" offense. *Ramos v. State*, 636 S.W.3d 646, 651 (Tex. Crim. App. 2021). The third protection, against multiple punishments, is the double-jeopardy issue in this case.

To decide whether the double-jeopardy protection against multiple punishments for the same offense has been infringed, courts must seek to understand how many punishments the law actually permits: What has the state legislature prescribed with respect to how many times an offender may be punished? *See Missouri v. Hunter*, 459 U.S. 359, 368 (1983) ("Legislatures, not courts, prescribe the scope of punishments."); *Ex parte Benson*, 459 S.W.3d 67, 71 & n.8 (Tex. Crim. App. 2015) (citing *Hunter* for the proposition that, in the multiple punishments context, how many punishments the Double Jeopardy Clause will permit is a matter for the Legislature).

### (B).  Different Statutes: *Blockburger*

When separately enumerated penal statutes are involved, this Court has said, "the traditional starting point for determining 'sameness' for multiple-punishment double-jeopardy analysis is the *Blockburger* test." *Ramos*, 636 S.W.3d at 651 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Implementing its "cognate-pleadings approach" to the *Blockburger* "same-elements" test, this Court asks whether each offense, as pled in the charging instrument, contains at least one element that the other does not. *Benson*, 459 S.W.3d at 72. If not, then the Court presumes that the two offenses are the same for

multiple-punishment double-jeopardy purposes. *Id.* But if each offense *does* contain an element that the other does not, then the presumption is that the offenses are *different*, and the Court goes on to inquire whether other considerations may operate to defeat that presumption. *Id.* at 72–73 (citing *Ervin v. State*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999)).[5] In conducting this "same-elements" analysis, the Court looks only to "the pleadings and the relevant statutory provisions[,]" not "the evidence presented at trial." *Id.* at 73.

### (C). Same Statute: "Allowable Units of Prosecution"

But when the question is how many times a defendant may be punished for violating a single statute, the analysis does not begin with *Blockburger*'s elements approach. Instead, the Court simply conducts an "allowable units of prosecution" analysis. *See Benson*, 459 S.W.3d at 71 ("When only one statute is at issue, the 'elements' analysis is necessarily resolved in the defendant's favor, and only a 'units' analysis remains to be conducted."). A "units of prosecution" analysis, in turn, may involve one of at least two questions, depending on whether (1) the defendant is being convicted more than once for an offense defined under the *identical* statutory subsection, or whether (2) he is being convicted more than once (as in the instant case) under *different* statutory subsections of the same penal statute.

### (1). Same Statute: Same Subsection

---

[5] Appellant argues that consideration of the *Ervin* factors establishes that the offenses in this case should be regarded as the same for multiple-punishments double-jeopardy purposes. For reasons we will explain in the text *post*, we disagree.

Under the first of these two "units of prosecution" analyses, the question will often devolve into a determination of when one violation of the statutory offense has come to an end and another identically defined violation of the same statutory offense has begun; or it may depend on how many victims of the identically defined offense there were. *See id.* at 73 ("This . . . inquiry involves determining such things as whether there were two murder victims [or] whether a victim who was assaulted on Monday was assaulted again on Tuesday[.]"). Our cases provide ready examples of this kind of "units of prosecution" inquiry.

For instance, in *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006), the Court determined that, because our penal code defines burglary as a property offense and not an assaultive-type offense, "the allowable unit of prosecution in a burglary is the unlawful entry." Thus, when a defendant breaks into a dwelling and commits a discrete felony against each of two of its inhabitants, he has violated the burglary statute only once. *Id.* In contrast, *Ex parte Hawkins*, 6 S.W.3d 554, 555 (Tex. Crim. App. 1999), the Court addressed how many times a defendant could be punished under the identical provisions of the robbery statute when he assaults two people at the same time in order to take the property of only one of them. The Court held there that, because (unlike burglary) robbery is an assaultive offense under our current penal code, the appropriate "unit of prosecution" is the number of assault victims, not the number of victims from whom property was taken. *Id.* at 560.

### (2). Same Statute: Different Subsections[6]

This case, however, involves the second kind of "units of prosecution" inquiry mentioned above. In this context, the Court must ask a different question: whether, when a single act or course of conduct by a defendant violates more than one subsection of the same penal statute, the defendant may be punished separately for violating each discrete subsection, or may he be punished only once?

Examples of "units of prosecution"-analyses of this kind may be found in *Loving v. State*, 401 S.W.3d 642 (Tex. Crim. App. 2013), *Gonzales v. State*, 304 S.W.3d 838 (Tex. Crim. App. 2010), and *Haight v. State*, 137 S.W.3d 48 (Tex. Crim. App. 2004). Each of these cases involved a statute prohibiting numerous alternatively described acts, any one of which would constitute a commission of the offense. The question was: When the defendant's conduct included more than one of these actionable acts, could he be punished for each of them, or only one?

In *Loving*, the Court concluded that the appellant was properly

---

[6] We use the word "subsection" somewhat advisedly here, for the sake of convenience. It is sometimes the case that the same, identical subsection of a penal provision will itself contain more than one distinct theory for how the offense may be committed. When we say "different subsection" in this portion of our discussion, we should be understood to mean *not only* a different subsection, but also *a different theory for committing the offense* that is also contained within that same subsection. *See* our discussion of *Gonzales v. State*, 304 S.W.3d 838 (Tex. Crim. App. 2010), and *Haight v. State*, 137 S.3d 48 (Tex. Crim. App. 2004), in the text, *post*. As will be seen, in our discussion of *Gonzales* and *Haight*, the Court treats cases addressing statutes that define different theories for committing an offense entirely within the same subsection similarly to those cases in which the statutes involved distinctly define different theories of commission in different subsections of the same statute. This case involves commission of distinct offenses defined in different subsections of the same statute.

convicted and punished under separate subsections of the indecency-with-a-child statute—both for exposure and for contact. 401 S.W.3d at 649. In *Gonzales*, the Court sanctioned multiple convictions and punishments for the commission of distinct statutorily defined acts of aggravated sexual assault of a child—even as defined within the *same subsection* of the statute. *See* 304 S.W.3d at 849 (defendant convicted of both anal and vaginal penetration of a child victim pursuant to TEX. PENAL CODE § 22.021(a)(1)(B)(i)). Similarly, in *Haight*, the Court permitted multiple convictions and punishments under the same subsection of the official misconduct statute for separate statutorily defined instances of that offense, since the two theories of commission were separated by the conjunctive "or," and each "would cause a different type of harm to a victim." *See* 137 S.W.3d at 50–51 (defendant convicted for subjecting his victim to both arrest and mistreatment, which were deemed to be independently unlawful under TEX. PENAL CODE § 39.03(a)(1)).

### (D). "Focus" or "Gravamen"

Ultimately, however, regardless of which of these types of analysis is the appropriate one in a given case, this Court has said that "the best indicator" of the allowable unit of prosecution "seems to be the focus or 'gravamen' of the offense." *Jones v. State*, 323 S.W.3d 885, 889 (Tex. Crim. App. 2010). In the same-statute/different-subsections cases discussed above (*Loving*, *Gonzales*, and *Haight*), the gravamen of the offense was deemed to be the controlling factor. And when examining a statute to determine "the focus or gravamen" of the offense for double-jeopardy purposes, the Court will look to see what it has said when

construing that statute for *other* purposes. It does this because "[w]hether statutory construction occurs in the double jeopardy context," or in some other context such as jury unanimity, "the issue is the same: the meaning of the statute." *Id.*

### III. ANALYSIS

### (A). Section 22.04(a), Subsections (1) and (2): *Stuhler*

In *Stuhler*, this Court observed that Section 22.04(a) is a result-of-conduct type of offense. That is to say, it is unconcerned with *how* the offense is committed, and it focuses instead on the various types of harm it seeks to avert. *See* 218 S.W.3d at 718 (noting that prior cases of this Court have "regarded the gravamen of the offense of injury to a child to be, not the particular conduct that caused the injury, but the resulting injury that the conduct caused"). Relying on the so-called "eighth grade grammar" rule of thumb for construing the gravamen of penal statutes, first articulated by Judge Cochran in *Jefferson v. State*, 189 S.W.3d 305, 315–16 (Tex. Crim. App. 2006) (Cochran, J., concurring), the Court concluded that the proper way to construe Section 22.04(a)—for purposes of deciding whether a jury had to be unanimous with respect to a verdict under any one subsection—was to hold that each subsection constituted a distinct offense. *Stuhler*, 218 S.W.3d at 718–19.

In reaching that conclusion in *Stuhler*, the Court observed:

> In Section 22.04(a) of the Penal Code, the main verb defining the offense of injury to a child is, of course, "causes." The direct object of that main verb is, variously, "serious bodily injury," "serious mental deficiency, impairment, or injury," or plain "bodily injury." The Legislature has thus defined the offense of injury to a child according to the kind and degree of injury that results. As the court of appeals noted, these various results are set out

in different subsections of the statute, and the degree of the
offense is determined, at least in part, according to which
of the results the defendant's act or omission caused.

*Id.*; *see also Pizzo v. State*, 235 S.W.3d 711, 718–19 (Tex. Crim. App.
2007) (relying on *Stuhler*'s analysis to support the conclusion that each
of the types of "sexual contact" defined in the indecency-with-a-child
statute constituted a distinct offense requiring jury unanimity).

Jury unanimity and double jeopardy, the Court has said, "are
closely intertwined strands of our jurisprudence" that "address the same
basic question: In a given situation, do different legal theories of
criminal liability comprise different offenses, or do they comprise
alternate methods of committing the same offense?" *Huffman v. State*,
267 S.W.3d 902, 905 (Tex. Crim. App. 2008). Having found the various
"theories of criminal liability" set out in the subsections of Section
22.04(a) to constitute "different offenses" for jury unanimity purposes in
*Stuhler*, we perceive no basis to construe the statute any differently for
purposes of double jeopardy. 218 S.W.3d at 719; *see also Huffman*, 267
S.W.3d at 905 ("In the injury to a child context, whether separate legal
theories comprise separate offenses depends upon whether the theories
differ with respect to the result of the defendant's conduct.").

**(B).  Distinguishing *Villanueva***

The court of appeals was mistaken to draw a different conclusion
based upon this Court's later opinion in *Villanueva*. It is true that,
unlike *Stuhler*, *Villanueva* was a double-jeopardy case, not a case about
jury unanimity. Even so, in resolving the double-jeopardy issue there,
the Court followed its conclusion in *Jefferson*, 189 S.W.3d at 312,
another case addressing jury unanimity. The question in *Jefferson* was

whether committing injury to a child by *act* is a different offense than committing injury to a child by *omission*. There, the Court expressly held that the "focus" of the injury to a child statute was the result of conduct, not whether any of the specified results are caused by act or omission. *Id.* Whether the particular result was caused by act or by omission was considered by the Court in *Jefferson* to be non-elemental— as merely alternative "means of committing a single criminal offense and not . . . separate criminal offenses." *Id.* at 313. And applying that construction to the double-jeopardy question in *Villanueva*, the Court concluded that:

> "serious bodily injury committed against the same victim at the same time should be considered the same offense for purposes of the double-jeopardy prohibition against multiple punishments, regardless of whether that injury to that victim resulted from the actor's act, his omission, or by a combination of his act and omission."

227 S.W.3d at 748.

Unlike this case, *Villanueva* involved only one of the statutorily defined *results* identified in Section 22.04(a)(1), serious bodily injury. Whether that one injury was caused by act or by omission had no bearing on the question of how many "offenses" the appellant could be punished for under the Double Jeopardy Clause.[7] Only one injury

---

[7] It is true that in *Villanueva* the Court discussed, albeit in dicta, a hypothetical situation in which a defendant might be punished more than once for an act and an omission. The Court hypothesized that if, after causing serious bodily injury by act, the defendant failed to seek medical attention, and that omission "resulted in a separate and discrete, or at least incrementally greater injury" than was caused by the act alone, then the defendant might be susceptible to multiple punishments. 227 S.W.3d at 748–49. But this would

occurred. Because the "focus" or "gravamen" of injury to a child is the result of conduct (the injury), the Court has continued to insist—even after *Villanueva*—that the different statutorily defined results in the injury to a child statute constitute separate offenses, at least for jury unanimity purposes. *See Huffman*, 267 S.W.3d at 906 (recognizing that jury unanimity is required with respect to the various injury to a child results even after *Villanueva* because the "legal theories of injury to a child . . . differed with respect to the type of injury inflicted").

We can perceive no plausible justification for altering our settled construction of the statute for purposes of the double-jeopardy inquiry. *See Jones*, 323 S.W.3d at 889 (statutory construction does not vary depending on the legal issue involved). The allowable units of prosecution in this case are determined by how many separate and discrete statutorily defined types of injurious results Appellant's act or conduct caused. It does not matter how many acts or incidents of abuse it may have taken him to inflict those distinct statutorily defined injuries.

## (C). *Ervin* does not control

Appellant argues that consideration of the non-exclusive *Ervin*

---

constitute an application of the "same statute: same-subsection" version of the units of prosecution analysis discussed above. That is to say, it would involve the question of how many times the defendant could be punished under the same statutory subsection, namely, Section 22.04(a)(1) ("serious bodily injury"). The present case involves application of the second type of units of prosecution analysis: "same statute: different subsection." We resolve the double jeopardy question in this context simply by asking whether the differently specified statutory results constitute separate offenses. And in *Stuhler*, the Court authoritatively construed Subsections (1) and (2) of Section 21.04(a) to identify discrete offenses. 218 S.W.3d at 719.

factors militates in favor of the conclusion that Section 22.04(a)(1) and Section 22.04(a)(2) should be regarded as two ways of committing a single offense for double jeopardy purposes.[8] But in all of the same-statute/different–subsection cases discussed above (*Loving*, *Gonzales*, and *Haight*), this Court has found its focus/gravamen analysis to be determinative, notwithstanding consideration of the other *Ervin* factors. *Loving*, particularly, explicitly acknowledged the appellant's argument in that case was predicated on *Ervin*. *Loving,* 401 S.W.3d at 645. But it nevertheless based its conclusion that the subsections of the statute at issue there constituted different offenses primarily on its focus/gravamen analysis. *Id*. at 649. In *Stuhler*, this Court has already concluded that the focus/gravamen of Section 22.04 resides in the separate results proscribed in the individual subsections therein, and it has therefore concluded that they identify different offenses. *Stuhler*,

---

[8] The *Ervin* factors are:

(1) whether offenses are in the same statutory section or chapter; (2) whether the offenses are phrased in the alternative; (3) whether the offenses are named similarly; (4) whether the offenses have common punishment ranges; (5) whether the offenses have a common focus or gravamen; (6) whether the common focus tends to indicate a single instance of conduct; (7) whether the elements that differ between the two offenses can be considered the same under an imputed theory of liability that would result in the offenses being considered the same under *Blockburger* (a liberalized *Blockburger* standard); and (8) whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double-jeopardy purposes.

*Benson*, 459 S.W.3d at 72 (summarizing the factors set out in *Ervin*, 991 S.W.2d at 814).

201 S.W.3d at 718–19. And what is true of the statute for jury unanimity purposes, we conclude today, is equally true for multiple-punishment double-jeopardy purposes as well.

## IV. CONCLUSION

We conclude that punishing Appellant in the same trial for causing serious bodily injury, under Section 22.04(a)(1), and also for causing serious mental deficiency, impairment, or injury, under Section 22.04(a)(2), did not violate the Double Jeopardy Clause. There was some evidence that, by whatever act or acts Appellant inflicted the "whiplash-type" injuries to the victim, those injuries included both "serious bodily injury" in the form of retinal bleeding that caused her blindness,[9] and "serious mental deficiency" in the form of diffuse brain bleeding that has caused her developmental delays.[10] The judgment of the court of appeals is therefore reversed insofar as it vacated Appellant's conviction and punishment under Count II of the indictment, and the cause is remanded to that court for further proceedings consistent with this opinion.

**DELIVERED:**                      June 22, 2022
**PUBLISH**

---

[9] *See* TEX. PENAL CODE § 1.07(a)(46) ("'Serious bodily injury' means bodily injury that causes . . . protracted loss or impairment of the function of any bodily member or organ."); *id*. § 1.07(a)(8) ("'Bodily injury' means . . . any impairment of physical condition.").

[10] We express no opinion, of course, with respect to the legal sufficiency of the evidence to establish Appellant's conviction under Count II of the indictment, leaving that determination to the court of appeals in the first instance on remand. *See* note 3, *ante*.